**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AMITA MUKHERJEE,**

      **Plaintiff,**

v.                                                                                    Case No.:

**BIOTRONIK, INC.,**

      **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Amita Mukherjee ("Mukherjee"), by and through her undersigned attorneys, hereby files this action against Defendant Biotronik, Inc. ("Biotronik") and states as follows:

**PRELIMINARY STATEMENT**

1. This is an action seeking damages and equitable relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Florida Civil Rights Act, Fla. Stat. §§ 760.01, *et seq*. ("FCRA").

2. Defendant hired Mukherjee in approximately October of 2010 as a sales representative. During her tenure at Biotronik, Mukherjee performed her job duties successfully. Despite Mukherjee's many achievements, Defendant subjected her to discrimination and harassment because of her gender and retaliated against her because she had reported these violations of state and federal law. On August 18, 2015, after 5 years of service to Biotronik, Defendant summarily fired Plaintiff, claiming that she did not work well with her "team" – the exclusively male coworkers and supervisors that subjected her to discrimination and harassment.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII. This court has supplemental jurisdiction over plaintiff's related claims arising under state laws pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practices were committed in this district.

5. On October 12, 2015, Mukherjee timely filed a charge of sex discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

6. On or about March 23, 2017, the EEOC issued a Notice of Right to Sue to Mukherjee. This Complaint has been timely filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

7. Plaintiff's Charge of Discrimination was automatically "dual-filed" with the Florida Commission on Human Relations and therefore Plaintiff has satisfied all prerequisites to filing an action under the FCRA as well.

## THE PARTIES

8. Plaintiff is a female who resides in Tampa, Florida and is a citizen of the State of Florida.

9. At all times material hereto, Plaintiff was an employee as defined by applicable law.

10. Defendant is a Delaware corporation with its principal place of business in the State of Oregon.

11. Defendant is authorized to and regularly conducts business in the State of Florida.

12. At all times material hereto, Defendant was an employer as defined by applicable law.

## FACTUAL ALLEGATIONS

13. Defendant Biotronik is a biomedical technology company that provides Cardiac Rhythm Management ("CRM") therapies to patients with cardiac disorders.

14. Mukherjee began working for Defendant on or about October 4, 2010 as a sales representative in Tampa, Florida.

15. Plaintiff was initially hired pursuant to an employment agreement, which expired by its terms on October 4, 2012.

16. Following expiration of that contract, Plaintiff became an "at-will" employee of Biotronik.

17. During her tenure, Mukherjee's sales numbers exhibited significant growth.

18. In 2011, Plaintiff was recognized for 1700% growth at Biotronik's national sales meeting.

19. In the spring of 2011 Rory Carmichael ("Carmichael") became Plaintiff's direct supervisor.

20. Carmichael began unjustly taking accounts away from Plaintiff and giving them to a team of all-male salespeople.

21. By November 2013, Carmichael had taken away 8 out of 23 accounts in Plaintiff's territory and given them to male employees. These 8 accounts were among the most profitable accounts in Plaintiff's territory. Out of the 15 remaining accounts, 7 were small hospitals with very low volume, and 5 others had contractual restrictions that either prevented them from dealing with Biotronik at all or placed severe restrictions on Plaintiff's ability to do business with them. Thus, Plaintiff was essentially left only 3 accounts with which to make a living.

22. Under Carmichael, Plaintiff was the only female sales representative for Biotronik

in Florida and was discriminated against because of her sex.

23. Plaintiff was also subjected to a hostile work environment because of her sex.

24. Carmichael often told Plaintiff that male physicians preferred to work with male salespeople, even though Plaintiff has a proven track record of success in working with male physicians.

25. Carmichael would also criticize Plaintiff for being "pushy," yet he praised male employees for their "tenacity" in employing the same type of sales approach.

26. At one point, Carmichael told Plaintiff that she should "take one for the team" by engaging in sexual relations with a Tampa General Hospital employee so that Biotronik could get a contract with the hospital.

27. Plaintiff complained to Carmichael about the discriminatory treatment in February of 2014.

28. Following this complaint, Carmichael treated Plaintiff with increased hostility and systematically alienated her and punished her for speaking up.  This hostile treatment included: excluding Plaintiff from important client meetings and business updates; disallowing Plaintiff's commissions on sales outside her territory (despite allowing the same for male employees); restricting Plaintiff's access to support staff and other resources provided to male sales employees; instructing other sales representatives not to assist Plaintiff on her sales or work with Plaintiff on their sales; and allowing male employees to take Plaintiff's accounts.

29. In 2014, Carmichael also gave Plaintiff her first negative performance review in all of her years with Biotronik.

30. In or about June of 2015, Plaintiff escalated her concerns about discrimination and harassment to Carmichael's superior, Hugh McCollough ("McCollough"). McCollough acknowledged that there did seem to be a pattern of unfair treatment towards Plaintiff by

Carmichael, but that Human Resources would have to conduct an investigation before any action could be taken.

31. On June 18, 2015, Plaintiff received a call from Ramon Carrasquillo ("Carrasquillo") in Biotronik's Human Resources department. Carrasquillo had already spoken with Carmichael, who had badmouthed Plaintiff and painted her as a problem employee. The "solution" proposed by Carrasquillo was that Plaintiff consider relocating to another territory, which would require uprooting herself and her family and starting all over again in a new location after spending years building customer relationships in the Tampa area. Plaintiff found this to be unacceptable and proposed instead that she be assigned to a new supervisor or granted an equitable share of the accounts in her territory and be allowed to work alone. Her suggestions were ignored.

32. Instead, Carrasquillo organized a meeting on August 11, 2015 in Tampa, between himself, Plaintiff, Carmichael, McCollough, and another member of management, Fernando Perez. Although Carrasquillo characterized this meeting as an open forum to "lay all our cards out on the table" and address Plaintiff's concerns with Carmichael's treatment of her, the focus of the meeting was to allow Carmichael to go through his retaliatory performance evaluation of Plaintiff and highlight his reasons for such low scores. Plaintiff was never given an opportunity to speak freely or voice her concerns regarding the unlawful sex discrimination, harassment, and retaliation she experienced.

33. At the conclusion of the meeting, Plaintiff was instructed to take the week off of work and not to contact any co-workers or supervisors.

34. On August 18, 2015, Carrasquillo terminated Plaintiff's employment with Biotronik, effective immediately.

35. Biotronik's adverse actions towards Plaintiff constituted unlawful discrimination

and harassment based on sex, as well as retaliation for raising a good faith complaint of such treatment.

36. Similarly situated male employees and/or employees who had not engaged in protected activity, such as Ray Zasoski, were treated better than Plaintiff despite having documented performance issues.

37. The adverse employment actions described herein were not taken for legitimate business reasons, but rather, were taken for unlawful discriminatory and/or retaliatory reasons.

38. As a result of Defendant's unlawful actions Plaintiff has suffered damages.

39. Plaintiff has retained the law firm of Shumaker, Loop & Kendrick, LLP to represent her in this action and has agreed to pay the firm a reasonable fee for its services.

### COUNT ONE: Discrimination Based on Sex in Violation of Title VII

40. Plaintiff re-alleges and incorporates paragraphs 1 through 39 hereof, as if fully set forth herein.

41. Plaintiff was qualified for her position when Defendant fired her.

42. Defendant's employees, including Carmichael, regularly made discriminatory comments to Mukherjee and her co-workers regarding her gender.

43. In addition, Defendant marginalized Plaintiff while treating similarly-situated male employees more favorably.

44. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

45. Defendant intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT TWO: Sexual Harassment in Violation of Title VII

46. Plaintiff re-alleges and incorporates paragraphs 1 through 39 hereof, as if fully set forth herein.

47. Plaintiff was subjected to unwelcome, offensive and harassing conduct during her employment with Defendant which was based upon and directed at Plaintiff by reason of her gender.

48. Plaintiff notified Defendant, which was otherwise aware, of the sexually harassing and discriminatory conduct, but Defendant failed to take any appropriate corrective action.

49. This sexually harassing and discriminatory conduct was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's health and work performance and so as to create an intimidating, hostile and offensive working environment.

50. Said conduct and harassment damaged the reputation and credibility of Plaintiff, the only female sales representative in her territory, and created an atmosphere of hostility.

51. Moreover, this conduct was ongoing and pervasive and constituted a "continuing violation" of Plaintiff's rights.

52. During the course of her employment, Plaintiff was forced to work in a sexual discriminatory and hostile environment.

53. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

54. Defendant intentionally violated Mukherjee's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT THREE: Retaliation in Violation of Title VII

55. Plaintiff re-alleges and incorporates paragraphs 1 through 39 hereof, as if fully set forth herein.

56. Plaintiff was qualified for her position when Defendant fired her.

57. During her employment, Plaintiff engaged in protected activity by complaining of discrimination and harassment under Title VII.

58. Defendant summarily fired Mukherjee on August 17, 2015 claiming that Plaintiff did not work well with her "team" – the exclusively male coworkers and supervisors that subjected her to discrimination and harassment.

59. Defendant's alleged reason for terminating Plaintiff's employment is pretextual and baseless. Defendant fired Mukherjee because she complained of discrimination and harassment.

60. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

61. Defendant intentionally violated Mukherjee's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

### COUNT FOUR: Discrimination Based on Sex in Violation of the FCRA

62. Plaintiff re-alleges and incorporates paragraphs 1 through 39 hereof, as if fully set forth herein.

63. Plaintiff was qualified for her position when Defendant fired her.

64. Defendant's employees, including Carmichael, regularly made discriminatory comments to Mukherjee and her co-workers regarding her gender.

65. In addition, Defendant marginalized Plaintiff while treating similarly-situated male employees more favorably.

66. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of

bringing this action.

67. Defendant intentionally violated Plaintiff's rights under the FCRA, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT FIVE: Sexual Harassment in Violation of the FCRA

68. Plaintiff re-alleges and incorporates paragraphs 1 through 39 hereof, as if fully set forth herein.

69. Plaintiff was subjected to unwelcome, offensive and harassing conduct during her employment with Defendant which was based upon and directed at Plaintiff by reason of her gender.

70. Plaintiff notified Defendant, which was otherwise aware, of the sexually harassing and discriminatory conduct, but Defendant failed to take any appropriate corrective action.

71. This sexually harassing and discriminatory conduct was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's physical health and work performance and so as to create an intimidating, hostile and offensive working environment.

72. Said conduct and harassment damaged the reputation and credibility of Plaintiff, the only female sales representative in her territory, and created an atmosphere of hostility.

73. Moreover, this conduct was ongoing and pervasive and constituted a "continuing violation" of Plaintiff's rights.

74. During the course of her employment, Plaintiff was forced to work in a discriminatory and hostile environment.

75. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

76. Defendant intentionally violated Mukherjee's rights under the FCRA, with malice

or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT SIX: Retaliation in Violation of the FCRA

77. Plaintiff re-alleges and incorporates paragraphs 1 through 39 hereof, as if fully set forth herein.

78. Plaintiff was qualified for her position when Defendant fired her.

79. During her employment, Plaintiff engaged in protected activity by complaining of discrimination and harassment under Title VII.

80. Defendant summarily fired Mukherjee on August 17, 2015 claiming that Plaintiff did not work well with her "team" – the exclusively male coworkers and supervisors that subjected her to discrimination and harassment.

81. Defendant's alleged reason for terminating Plaintiff's employment is pretextual and baseless. Defendant fired Mukherjee because she complained of discrimination and harassment.

82. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

83. Defendant intentionally violated Mukherjee's rights under FCRA, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

    A. Accept jurisdiction over this matter;

    B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

    C. Order Defendant to reinstate Plaintiff to a position comparable to her

former position or, in lieu of reinstatement, award her front pay (including benefits);

  D. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

  E. Award to Plaintiff compensatory damages;

  F. Award to Plaintiff punitive damages; and

  G. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted by:

      **SHUMAKER, LOOP & KENDRICK, LLP**

     By: */s/ C. Philip Campbell, Jr.*
      C. PHILIP CAMPBELL, JR., ESQ. (FBN: 160973)
      AMANDA ELLEN B. CLAY, ESQ. (FBN: 28808)
      101 East Kennedy Boulevard – Suite 2800
      Tampa, FL 33602-5126
      Telephone: (813) 229-7600
      Facsimile: (813) 229-1660
      Primary email: pcampbell@slk-law.com
      Secondary email: jraleigh@slk-law.com
      Primary email: mclay@slk-law.com
      Secondary email: jraleigh@slk-law.com
      *Counsel for Plaintiff, Amita Mukherjee*